### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JOSHUA BROUGHTON, TIM FLEMMING, and STEPHEN TURNER, | ) ) ) |
| Plaintiffs, | ) Case No. 06-CV-1076 |
| | ) |
| | ) Judge Mihm |
| v. | ) |
| | ) |
| BILLY JOE THOMAS, | ) |
| | ) |
| Defendant. | ) |

### ANSWERS OF BILLY JOE THOMAS, AFFIRMATIVE
### DEFENSES AND COUNTERCLAIMS

NOW COMES BILLY JOE THOMAS, by his attorneys, Michael A. Snyder and Timothy S. McGovern, and for his answers to the complaints of plaintiffs, JOSHUA BROUGHTON, TIM FLEMMING, and STEPHEN TURNER, states:

### Allegations Common to All Counts

*Jurisdiction & Venue*

1.      The incident forming the basis of this litigation occurred on May 21, 2004, at approximately 10 p.m., near mile marker 181 on the Illinois River, approximately one-half mile north of the Chillicothe boat docks in Chillicothe, Peoria County, Illinois, demonstrating that without waiving the objections given in paragraphs 15 and 16 below:

(a)      The District Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1333 and 28 U.S.C. § 1367; and

(b)      Pursuant to Local Rule 40.1, venue is proper in the Peoria Division of the Central District of the  United States District Court.

ANSWER: Admitted.

*Parties*

2.  At the aforementioned time and place, JOSHUA BROUGHTON, TIM FLEMMING, and STEPHEN TURNER, were passengers in a 17-foot pleasure boat operated by Casey A. Barnick.

ANSWER: Denied. The plaintiffs were joint adventurers with Casey Barnick and Eric Allen.

3.  At all times material herein, Illinois Marine Towing, Inc. was a corporation doing business in Illinois.

ANSWER: Admitted.

4.  At the aforementioned time and place, BILLY JOE THOMAS was operating the M/V *Herman Crown* and *Barge RMT315.*

ANSWER: Admitted.

5.  At the aforementioned time and place, BILLY JOE THOMAS was the agent or employee of Illinois Marine Towing, Inc., and was within the scope of his agency and/or employment.

ANSWER:  Admitted that the defendant was acting within the scope of his employment. Denied that he was an agent of Illinois Marine Towing, Inc.

6.  At all times material herein, there was in full force and effect the following Illinois statute, 625 ILCS 45/4-2(C) which provides:

> C.  Every vessel 39 feet or more in length shall carry and display
>  when underway, such additional or alternate lights as shall be
> required by the U.S. Coast Guard for water craft of equivalent
> length and type.

ANSWER:  The existence of the statute is admitted but its application to the M/V

HERMAN CROWN and Barge RMT 315 are denied; and Billy Joe Thomas

affirmatively alleges that the lighting of these vessels was governed by 33 U.S.C.

§ 2024.

7.  At all times material herein, there was in full force and and effect 33 USC, §2024,

commonly known as U.S. Coast Guard Navigation Rule No. 24, which states:

(c) Power-driven vessel when pushing ahead or towing alongside

A power-driven vessel when pushing ahead or towing alongside, except as
required by **paragraphs (b)** and (i) of this Rule, shall exhibit:

(i)  instead of the light prescribed either in Rule 23(a)(i) or 23(a)(ii),
two masthead lights in a vertical line;

(ii)  sidelights; and

(iii)  two towing lights in a vertical line.

(f)    Vessels being towed alongside or pushed in a group

Provided that any number of vessels being towed alongside or pushed in a
group shall be lighted as one vessel, except as provided in paragraph (iii)--

(i)    a vessel being pushed ahead, not being part of a composite
unit, shall exhibit at the forward end, sidelights and a special
flashing light;

ANSWER:   Denied for lack of complete quote of all relevant sub sections

including (h) and (i).

8.  At all material times herein, there was in full force and effect 33 U.S.C. §2015(b)

commonly known as U.S. Coast Guard Navigational Rule 15, which states:

(b) Vessels crossing river

Notwithstanding paragraph (a), on the Great Lakes, Western Rivers, or water specified by the Secretary, a power-driven vessel crossing a river shall keep out of the way of a powerdriven vessel ascending or descending the river.

ANSWER:  The existence of the statute is admitted.  Denied that the defendant was

crossing the river.

9.  At all material times herein, there was in full force and effect 33 U.S.C. §2034(d),

commonly known as U.S. Coast Guard Navigational Rule 34, which states:

(b) Doubts or failure to understand signals

When vessels in sight of one another are approaching each other and from any cause either vessel fails to understand the intentions or actions of the other, or is in doubt whether sufficient action is being taken by the other to avoid collision, the vessel in doubt shall immediately indicate such doubt by giving at least five short and rapid blasts on the whistle. This signal may be supplemented by a light signal of at least five short and rapid flashes.

ANSWER: Statute admitted, violation denied.

10.  At all material times herein, there was in full force and effect 33 C.F.R. §164 .72 (a)

which states :

(a) Except as provided by § 164.01(b), each towing vessel must be equipped with the following navigational-safety equipment: (1) Marine Radar. ...

ANSWER: Statute admitted, application denied.

11.  At the aforementioned time and place, the pleasure boat operated by Casey A. Barnick

was heading north on the Illinois River when it collided with the aforementioned barge being

pushed by the *MIV Herman Crown.*

ANSWER: Admitted.

12.        As a result of said collision, JOSHUA BROUGHTON, TIM FLEMMING,

and STEPHEN TURNER sustained severe personal injuries.

ANSWER: Denied.

13.    These claims are being made under protest and without prejudice to

Plaintiffs/Claimants' position, set forth in other pleadings filed with this Court in Case

Number 1-05-CV-1057, that any limitation of or exoneration from liability is improper

and should be dismissed, and that the injunction prohibitinq legal proceedings be

dissolved and Piaintiff/Claimant be permitted to litigate his claims and actions under the

General Maritime Laws and/or the laws of the State of Illinois in the state court of his

choice.

ANSWER:  This is not an allegation of fact and defendant makes no answer.

14.    These claims are also being made without prejudice to Plaintiffs/Claimants'

already filed Complaint against Casey A. Barnick and Inland Marine Service, Inc.

(Illinois Marine Towing, Inc.) in the Circuit Court of the Tenth Judicial Circuit of

Illinois, Peoria County, in the Case Number 04 L 201. That pleading was removed to U.

S. District Court, Central District (Case No. 05-1057) by Defendant Illinois Marine

Towing Inc.

ANSWER: This is not an allegation of fact and defendant makes no answer.


## COUNT I

### Joshua Broughton vs. Bi11y Joe Thomas

NOW COMES Plaintiff/Claimant, JOSHUA BROUGHTON, and for his cause of

action against BILLY JOE THOMAS, states as follows:

1-14.  Plaintiff/Claimant hereby adopts and realleges paragraphs 1 through 14 of

the Allegations Common to All Counts section as paragraphs 1-14 of Count 1.

ANSWER:  Defendant repeats his answers and responses to paragraphs 1 through

14 as his answers and responses to paragraphs 1-14 of Count I.

15. At all relevant times, BILLY JOE THOMAS had a duty to ensure the *M/V*

*Herman Crown* and *3arge RNT* 315 were operated in a reasonably safe manner.

ANSWER:  Admitted that defendant had a duty to operate the M/V HERMAN

CROWN and barge RMT 315 in a reasonably safe manner, otherwise denied.

15. On May 21, 2004, BILLY JOE THOMAS was guilty of one more of the

following negligent acts, omissions, or violations of statute:

    (a)   Failed to keep a safe and proper lookout for other boats on the river as required by U.S. Coast Guard Rules;

    (b)   Failed to exhibit the lighting required by 62-5 111LCS ~5/4-2(C);

    (c)   Operated the vessel without proper lighting and radar required by U.S. Coast Guard Rules and Regulations;

    (d)   Failed to keep out of the way of a vessel ascending or descending a river as required by U.S. Coast Guard Rules; and/or

    (e)   Failed to sound a whistle when in doubt that efficient action was being taken by another

ANSWER: 15-2.  Defendant denies each and every allegation of the second

paragraph numbered 15 and each of its subparts (a) through (e).

**16. – 20.  There are no paragraphs numbered 16 through 20 and defendant**

**makes no answer.**

21.  As a direct and proximate result of one or more of the foregoing negligent

acts, omissions or violations of statute by BILLY JOE THOMAS, the pleasure craft in

which JOSHUA BROUGHTON was riding struck the aforementioned barge resulting in

serious injury and death to him.

ANSWER: Denied.

22. Plaintiff/Claimant desires and is entitled to trial by jury in this matter.

ANSWER: Denied. The only basis plaintiffs have for federal court

jurisdiction is admiralty and there is no jury in admiralty

cases. Rule 38(e) F.R.Civ. P.

WHEREFORE, the defendant Billy Joe Thomas prays that the complaint

of Joshua Broughton be dismissed at plaintiff's costs.

## **AFFIRMATIVE DEFENSES**

Defendant alleges the following affirmative defenses:

1.      At all material times there was a group of six loaded sand barges moored in the

Chillicothe Terminal of Galena Road Gravel, Inc. located approximately .5 miles northnortheast

of the Illinois River at mile 181.0

2.      At all material time the M/V Lemont Trader was laying alongside sunken spar

barges on the right descending bank of the Illinois River between mile point 180.7 and 180.9

with its bow headed upstream.

3.      At or about 10:00 P.M., the defendant was navigating the M/V HERMAN

CROWN pushing a single loaded sand barge out of the Galena slip and into the right descending

side of the Illinois River. Upon leaving the slip, the defendant broadcast a security call on VHF

Channel 16 advising traffic in the river of his position and intention to enter the river.

4.      At or about 10:00 p.m., a 17 foot motor boat was being navigated along the right

descending bank of the Illinois River at a speed in excess of 25 mph by Casey Barnick and was

located north of mile point 185.

5.    The horn of the M/V HERMAN CROWN was compliant with C.F.R. §86.05 and audible for a distance of at least 1.5 miles, but would not have been audible to Casey Barnick who was 4 miles away upwind and sitting close to a 60 horsepower boat motor.

6.    As the defendant was pushing one loaded barge stern first at a speed not in excess of two miles per hour with the intent of stopping it on the edge of the river, turning it end for end, and backing its stern downstream and into the two of the M/V LEMONT TRADER distance of not more than 1,000 feet, the defendant was playing the searchlight of the boat on the end of the barge farthest from the pilot house of the boat, and this, in addition to the two vertical white lights displayed above the pilot house of the HERMAN CROWN was at all times sufficient to bring attention to the forepart of the barge and the defendant was at all times in compliance with 33 U.S.C. § 2024 (h) and (i).

7.    At no time was the defendant crossing the Illinois River and at no time was the defendant a burdened vessel within the meaning of the Rules.

8.    The motorboat operated by Casey Barnick was never a privileged vessel within the meaning of the Rules.

9.    At all material times, the defendant was keeping a proper lookout and was navigating with due care caution.

10.    The visibility of the motorboat's lights was obscured by its passengers and the vessel was not seen by the defendant until its collision with the side of the barge in tow of the HERMAN CROWN was imminent.

11.    At approximately 10:10 p.m. Casey Barnick struck the broad side of Barge RMT 315 which was stopped or nearly so.   The defendant was not culpable by any act or omission which caused or contributed to cause the collision but the collision was solely caused by the

culpability of Casey Barnick and his co-adventurers, including the plaintiff Joshua Broughton in the particulars alleged in the Counterclaim which follows.

<u>**COUNTERCLAIM**</u>

1.     At all material times, Casey Barnick was intoxicated.

2.     At all material times passenger Joshua Broughton was intoxicated.

3.     At all material times passenger Stephen Turner was intoxicated.

4.     At all material times passenger Tim Flemming was intoxicated.

5.     At all material times, Eric Allen, deceased was intoxicated.

6.     Prior to 8:00 p.m. on the evening of May 21, 2004, Casey Barnick, Broughton, Turner, Fleming and Allen set about on a joint adventure to go beer drinking and boat riding on the Illinois River in Casey Barnick's 17' motorboat; and each of them contributed to the venture with money and or labor and became jointly and severally liable for any culpability in the operation of the boat which resulted in a collision, death or personal injury.

7.     The four co-adventurers continued drinking beer as Casey Barnick navigated the boat and they encouraged his intoxication by serving him beers as he was operating the boat and serving each other beer.

8.     As the five men became intoxicated, their ability to keep proper lookouts for their own safety became impaired and the judgment of Casey Barnick in his operation of the motorboat became impaired and each of the joint adventurers were aware that Casey Barnick was intoxicated while operating the boat.

9.     At or about 10:05 p.m. as they were heading southbound along the right descending bank of the Illinois River, the tow boats HERMAN CROWN and LEMONT TRADER came into view directly ahead of them.

10.     Notwithstanding that both boats were showing two white lights on their masts above their pilot houses, indicating that they had barges in tow, Casey Barnick and his joint adventurers took no heed of these signals and continued full ahead at a speed in excess of twenty-five miles per hour.

11.     One or more of his joint adventurers saw barge RMT 315 ahead of the M/V HERMAN CROWN and attempted to warn Casey Barnick, but Casey Barnick, being impaired by the excessive consumption of alcohol, failed to heed his passenger's warning and continued operating his boat at a high rate of speed into the side of Barge RMT 315 at or about 10:10 p.m.

12.     At all material times there was in full force and effect a statute of the State of Illinois which governed the conduct of navigators of vessels upon the Illinois River, as follows:

**<u>Illinois Consolidated Statutes Chapter 45/5 -16</u>**

**45/5-16. Operating a watercraft under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or combination thereof**

(A) 1. A person shall not operate or be in actual physical control of any watercraft within this State while:

(a) The alcohol concentration in such person's blood or breath is a concentration at which driving a motor vehicle is prohibited under subdivision (1) of subsection (a) of Section 11-501 of the Illinois Vehicle Code;
(b) Under the influence of alcohol;
(c) Under the influence of any other drug or combination of drugs to a degree which renders such person incapable of safely operating any watercraft;
(c-1) Under the influence of any intoxicating compound or combination of intoxicating compounds to a degree that renders the person incapable of safely operating any watercraft;
(d) Under the combined influence of alcohol and any other drug or drugs to a degree which renders such person incapable of safely operating a watercraft; or
(e) There is any amount of a drug, substance, or compound in the person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, or an intoxicating compound listed in the Use of Intoxicating Compounds Act.

2. The fact that any person charged with violating this Section is. or has been legally entitled to use alcohol, other drug or drugs, any intoxicating compound or compounds, or any combination of them, shall not constitute a defense against any charge of violating this Section.
* * *
* * *
5. Every person convicted of violating this Section shall be guilty of a Class 2 felony if the offense results in the death of a person. A person guilty of a Class 2 felony under this paragraph 5, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years.
* * *

13.  Casey Barnick pled guilty to a violation of 45 ILCS 5-16-5, a class 2 felony.

14.   At all material times there were in full force and effect statutes of the United States governing the navigation of vessels on the western rivers of the United States which includes the Illinois River, and that provided in relevant parts the following:

Rule 2.  Nothing in these Rules shall exonerate any vessel, or the owner, master or crew thereof, from the consequences of any neglect to comply with these Rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case. 33 U.S.C. § 2002;

Rule 5.  Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision. 33 U.S.C. § 2005;

Rule 6.  Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.  33 U.S.C. § 2006;

In determining a safe speed the following factors shall be among those taken into account:

(a) By all vessels:

(i) the state of visibility;

(ii) the traffic density including the concentration of fishing vessels or any other vessels;

(iv) at night the presence of background light such as from

shores lights or from back scatter of her own lights;

Rule 7.  Every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.  If there is any doubt such risk shall be deemed to exist. 33 U.S.C. 2007;

Rule 15.  When two power-driven vessels are crossing so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way and shall, if the circumstances of the case admit, avoid crossing ahead of the other vessel. 33 U.S.C. § 2015;

Rule 16.  Every vessel which is directed to keep out of the way of another vessel shall, so far as possible, take early and substantial action to keep well clear. U.S.C. § 2016;

Rule 17.  Where one of two vessels is to keep out of the way, the other shall keep her course and speed. § 2017;

Rule 18.   A power-driven vessel underway shall keep out of the way of:

>    (ii) A vessel restricted in her ability to maneuver.

14.  At all material times the presence of the M/V LEMONT TRADER and the M/V CHICAGO TRADER was clearly visible to any vessel proceeding south along the right descending bank of the Illinois River from a distance of at least four miles away, and the presence of these two vessels in proximity to one another created a special circumstance within the meaning of Rule 2.

15.  Due to his intoxication and his failure to keep a proper look-out, Casey Barnick failed to see the M/V LEMONT TRADER and the M/V CHICAGO TRADER and failed to recognize that their proximity to one another created a special circumstance in violation of Rule 2.

16.  Due to his intoxication, Casey Barnick was unable to keep a proper look-out and to recognize the prevailing circumstances presented by the presence of the M/V LEMONT TRADER and the M/V HERMAN CROWN and he failed to take appropriate

measures such as slowing down or stopping to permit his diminished mental capacity to recognize and comprehend the special circumstances presented by the M/V LEMONT TRADER and the M/V HERMAN CROWN all in violation of Rules 5, 6 and 7.

17.   In violation of Rule 6, Casey Barnick proceeded at a speed in excess of 25 miles per hour or 37 feet per second which was grossly excessive given the presence of the M/V LEMONT TRADER and the M/V HERMAN CROWN ahead of him, the presence of shore lights from the Chillicothe waterfront in the background and his diminished psycho-physiological responses resulting from his intoxication.

18.   In violation of Rule 7, Casey Barnick, failed to slow down upon approaching the M/V LEMONT TRADER and the M/V HERMAN CROWN and failed to steer his course to his port into the main channel of the river to give the towboats a wide berth and avoid the risk of any collision.

19.   In the thirty seconds preceding the collision, Casey Barnick's course was perpendicular to and crossing the course of the HERMAN CROWN and Barge RMT 315 from their port sides to their starboard sides.  As such, Casey Barnick had the duty to keep out of the way of the HERMAN CROWN according to Rule 15 which he violated.

20.   In violation of Rule 16, Casey Barnick took no action whatever to avoid the collision.

21.   Casey Barnick failed to heed the warnings of one or more of his joint adventurers that the barge RMT 315 was directly in his path.

22.   The M/V HERMAN CROWN with Barge RMT 315 ahead was a vessel restricted in her ability to maneuver and Casey Barnick's failure to keep out of the way was a violation of Rule 18.

23.    The culpability of Casey Barnick as set forth in paragraphs 1, 8 and 11 through 22 caused the collision between his motorboat and the side of barge RMT 315 which resulted in the death of Eric Allen and alleged injuries to Joshua Broughton, Tim Flemming and Stephen Turner.

24.    The Estate of Eric Allen, deceased, and Joshua Broughton, Tim Flemming, and Stephen Turner have filed lawsuits against Billy Joe Thomas alleging damages for wrongful death and personal injury.  Billy Joe Thomas will answer these complaints denying their allegations of his fault and their damages, but in the event that any liability is adjudged against Billy Joe Thomas, Joshua Broughton will be obligated to indemnify Billy Joe Thomas to the extent that his culpability caused the collision.

25.    As a joint adventurer, Joshua Broughton was as culpable as Casey Barnick for each of the violations of Illinois and federal law.

WHEREFORE, Billy Joe Thomas, prays that the Complaint of Joshua Broughton against him be dismissed; that joint adventurer Joshua Broughton be adjudged jointly and severally culpable for the collision; and that Joshua Broughton be adjudged liable to Billy Joe Thomas for any sums adjudged against him in favor of the Estate of Allen, Tim Flemming, Stephen Turner, and Casey Barnick and that Billy Joe Thomas recover his court costs and attorney fees with interest.

## COUNT II

## Tim Flemming vs. Bi11y Joe Thomas

1-14.  Plaintiff/Claimant hereby adopts and realleges paragraphs 1 through 14 of the Allegations Common to All Counts section as paragraphs 1-14 of Count II.

ANSWER: defendant repeats and realleges its answers and responses to paragraphs 1

through 14 of the Allegations Common to All Counts as its answers and responses to paragraphs

1 through 14 of Count II.

15. At all relevant times, BILLY JOE THOMAS had a duty to ensure the *M/V Herman*

*Crown* and *3arge RNT* 315 were operated in a reasonably safe manner.

ANSWER:  Admitted that defendant had a duty to operate the M/V HERMAN CROWN

and barge RMT 315 in a reasonably safe manner, otherwise denied.

15-2. On May 21, 2004, BILLY JOE THOMAS was guilty of one more of the following

negligent acts, omissions, or violations of statute:

(a)  Failed to keep a safe and proper lookout for other boats on the river as required
by U.S. Coast Guard Rules;

(b)  Failed to exhibit the lighting required by 62-5 111LCS ~5/4-2(C);

(c)  Operated the vessel without proper lighting and radar required by U.S. Coast
Guard Rules and Regulations;

(d)  Failed to keep out of the way of a vessel ascending or descending a river as
required by U.S. Coast Guard Rules; and/or

(e)  Failed to sound a whistle when in doubt that efficient action was being taken by another

ANSWER: 15-2.  Defendant denies each and every allegation of the second

paragraph numbered 15 and each of its subparts (a) through (e).

**16. – 20.  There are no paragraphs numbered 16 through 20 and defendant**

**makes no answer.**

21.  As a direct and proximate result of one or more of the foregoing negligent

acts, omissions or violations of statute by BILLY JOE THOMAS, the pleasure craft in which

TIM FLEMMING was riding struck the aforementioned barge resulting in serious injury and death to him.

ANSWER: Denied.

22. Plaintiff/Claimant desires and is entitled to trial by jury in this matter.

ANSWER: Denied. The only basis plaintiffs have for federal court jurisdiction is admiralty and there is no jury in admiralty cases. Rule 38 (e) F.R.Civ. P.

WHEREFORE, the defendant Billy Joe Thomas prays that the Complaint of Tim Flemming be dismissed at plaintiff's costs.

## AFFIRMATIVE DEFENSES

Defendant alleges the following affirmative defenses:

1. At all material times there was a group of six loaded sand barges moored in the Chillicothe Terminal of Galena Road Gravel, Inc. located approximately .5 miles northnortheast of the Illinois River at mile 181.0

2. At all material time the M/V Lemont Trader was laying alongside sunken spar barges on the right descending bank of the Illinois River between mile point 180.7 and 180.9 with its bow headed upstream.

3. At or about 10:00 P.M., the defendant was navigating the M/V HERMAN CROWN pushing a single loaded sand barge out of the Galena slip and into the right descending side of the Illinois River. Upon leaving the slip, the defendant broadcast a security call on VHF Channel 16 advising traffic in the river of his position and intention to enter the river.

4.    At or about 10:00 p.m., a 17 foot motor boat was being navigated along the right descending bank of the Illinois River at a speed in excess of 25 mph by Casey Barnick and was located north of mile point 185.

5.    The horn of the M/V HERMAN CROWN was compliant with C.F.R. §86.05 and audible for a distance of at least 1.5 miles, but would not have been audible to Casey Barnick who was 4 miles away upwind and sitting close to a 60 horsepower boat motor.

6.    As the defendant was pushing one loaded barge stern first at a speed not in excess of two miles per hour with the intent of stopping it on the edge of the river, turning it end for end, and backing its stern downstream and into the two of the M/V LEMONT TRADER distance of not more than 1,000 feet, the defendant was playing the searchlight of the boat on the end of the barge farthest from the pilot house of the boat, and this, in addition to the two vertical white lights displayed above the pilot house of the HERMAN CROWN was at all times sufficient to bring attention to the forepart of the barge and the defendant was at all times in compliance with 33 U.S.C. § 2024 (h) and (i).

7.    At no time was the defendant crossing the Illinois River and at no time was the defendant a burdened vessel within the meaning of the Rules.

8.    The motorboat operated by Casey Barnick was never a privileged vessel within the meaning of the Rules.

9.    At all material times, the defendant was keeping a proper lookout and was navigating with due care caution.

10.    The visibility of the motorboat's lights was obscured by its passengers and the vessel was not seen by the defendant until its collision with the side of the barge in tow of the HERMAN CROWN was imminent.

11.    At approximately 10:10 p.m. Casey Barnick struck the broad side of Barge RMT 315 which was stopped or nearly so at this time.   The defendant was not culpable by any act or omission which caused or contributed to cause the collision but the collision was solely caused by the culpability of Casey Barnick and his co-adventurers, including the plaintiff Tim Flemming in the particulars alleged in the Counterclaim which follows.

## COUNTERCLAIM

1.    At all material times, Casey Barnick was intoxicated.

2.    At all material times passenger Joshua Broughton was intoxicated.

3.    At all material times passenger Stephen Turner was intoxicated.

4.    At all material times passenger Tim Flemming was intoxicated.

5.    At all material times, Eric Allen, deceased was intoxicated.

6.    Prior to 8:00 p.m. on the evening of May 21, 2004, Casey Barnick, Broughton, Turner, Fleming and Allen set about on a joint adventure to go beer drinking and boat riding on the Illinois River in Casey Barnick's 17' motorboat; and each of them contributed to the venture with money and or labor and became jointly and severally liable for any culpability in the operation of the boat which resulted in a collision, death or personal injury.

7.    The four co-adventurers continued drinking beer as Casey Barnick navigated the boat and encouraged his intoxication by serving him beers as he was operating the boat.

8.    As the five men became intoxicated, their ability to keep proper lookouts for their own safety became impaired and the judgment of Casey Barnick in his operation of the motorboat became impaired and each of the joint adventurers was aware that Casey Barnick was intoxicated while operating the boat.

9.    At or about 10:05 p.m. as they were heading southbound along the right descending bank of the Illinois River, the tow boats HERMAN CROWN and LEMONT TRADER came into view directly ahead of them.

10.    Notwithstanding that both boats were showing two white lights on their masts above their pilot houses, indicating that they had barges in tow, Casey Barnick took no heed of these signals and continued full ahead at a speed in excess of twenty-five miles per hour.

11.    One or more of his joint adventurers saw barge RMT 315 ahead of the M/V HERMAN CROWN and attempted to warn Casey Barnick, but Casey Barnick, being impaired by the excessive consumption of alcohol, failed to heed his passenger's warning and continued operating his boat at a high rate of speed into the side of Barge RMT 315 at or about 10:10 p.m.

12.    At all material times there was in full force and effect a statute of the State of Illinois which governed the conduct of navigators of vessels upon the Illinois River, as follows:

**Illinois Consolidated Statutes Chapter 45/5 -16**
**45/5-16. Operating a watercraft under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or combination thereof**

(A) 1. A person shall not operate or be in actual physical control of any watercraft within this State while:

(a) The alcohol concentration in such person's blood or breath is a concentration at which driving a motor vehicle is prohibited under subdivision (1) of subsection (a) of Section 11-501 of the Illinois Vehicle Code;
(b) Under the influence of alcohol;
(c) Under the influence of any other drug or combination of drugs to a degree which renders such person incapable of safely operating any watercraft;
(c-1) Under the influence of any intoxicating compound or combination of intoxicating compounds to a degree that renders the person incapable of safely operating any watercraft;
(d) Under the combined influence of alcohol and any other drug or drugs to a degree which renders such person incapable of safely operating a watercraft; or
(e) There is any amount of a drug, substance, or compound in the person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled

19

Substances Act, or an intoxicating compound listed in the Use of Intoxicating Compounds Act.

2. The fact that any person charged with violating this Section is. or has been legally entitled to use alcohol, other drug or drugs, any intoxicating compound or compounds, or any combination of them, shall not constitute a defense against any charge of violating this Section.

* * *
* * *

5. Every person convicted of violating this Section shall be guilty of a Class 2 felony if the offense results in the death of a person. A person guilty of a Class 2 felony under this paragraph 5, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years.

* * *

13.  Casey Barnick pled guilty to a violation of 45 ILCS 5-16-5, a class 2 felony.

14.   At all material times there were in full force and effect statutes of the United States governing the navigation of vessels on the western rivers of the United States which includes the Illinois River, and that provided in relevant parts the following:

Rule 2.  Nothing in these Rules shall exonerate any vessel, or the owner, master or crew thereof, from the consequences of any neglect to comply with these Rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case. 33 U.S.C. § 2002;

Rule 5.  Every vessel shall at all times maintain a proper look-out by sight and circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision. 33 U.S.C. § 2005;

Rule 6.  Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.  33 U.S.C. § 2006;

In determining a safe speed the following factors shall be among those taken into account:

(a) By all vessels:

(i) the state of visibility;

(ii) the traffic density including the concentration of fishing vessels or any other vessels;

(iv) at night the presence of background light such as from
shores lights or from back scatter of her own lights;

Rule 7. Every vessel shall use all available means appropriate to the prevailing circumstances and condition to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist. 33 U.S.C. 2007;

Rule 15. When two power-driven vessels are crossing so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way and shall, if the circumstances of the case admit, avoid crossing ahead of the other vessel. 33 U.S.C. § 2015;

Rule 16. Every vessel which is directed to keep out of the way of another vessel shall, so far as possible, take early and substantial action to keep well clear. U.S.C. § 2016;

Rule 17. Where one of two vessels is to keep out of the way, the other shall keep her course and speed. § 2017;

Rule 18. A power-driven vessel underway shall keep out of the way of:

(ii) A vessel restricted in her ability to maneuver.

14. At all material times the presence of the M/V LEMONT TRADER and the M/V CHICAGO TRADER was clearly visible to any vessel proceeding south along the right descending bank of the Illinois River from a distance of at least four miles away, and the presence of these two vessels in proximity to one another created a special circumstance within the meaning of Rule 2.

15. Due to their intoxication and their failure to keep a proper look-out, Casey Barnick and his coadventurers failed to see the M/V LEMONT TRADER and the M/V CHICAGO TRADER and failed to recognize that their proximity to one another created a special circumstance in violation of Rule 2.

16. Due to his intoxication, Casey Barnick was unable to keep a proper look-out and to recognize the prevailing circumstances presented by the presence of the M/V

LEMONT TRADER and the M/V HERMAN CROWN and he failed to take appropriate measures such as slowing down or stopping to permit his diminished mental capacity to recognize and comprehend the special circumstances presented by the M/V LEMONT TRADER and the M/V HERMAN CROWN all in violation of Rules 5, 6 and 7.

17.   In violation of Rule 6, Casey Barnick proceeded at a speed in excess of 25 miles per hour or 37 feet per second which was grossly excessive given the presence of the M/V LEMONT TRADER and the M/V HERMAN CROWN ahead of him, the presence of shore lights from the Chillicothe waterfront in the background and his diminished psycho-physiological responses resulting from his intoxication.

18.     In violation of Rule 7, Casey Barnick, failed to slow down upon approaching the M/V LEMONT TRADER and the M/V HERMAN CROWN and failed to steer his course to his port into the main channel of the river to give the towboats a wide berth and avoid the risk of any collision.

19.     In the thirty seconds preceding the collision, Casey Barnick's course was perpendicular to and crossing the course of the HERMAN CROWN and Barge RMT 315 from their port sides to their starboard sides.  As such, Casey Barnick had the duty to keep out of the way of the HERMAN CROWN according to Rule 15 which he violated.

20.     In violation of Rule 16, Casey Barnick took no action whatever to avoid the collision.

21.     Casey Barnick failed to heed the warnings of one or more of his co-adventurers that barge RMT 315 was directly in his path.

22.     The M/V HERMAN CROWN with Barge RMT 315 ahead was a vessel restricted in her ability to maneuver and Casey Barnick's failure to keep out of the way was a violation of Rule 18.

23.     The culpability of Casey Barnick and his co-adventurers as set forth in paragraphs 1, 8 and 11  through 22 caused the collision between his motorboat and the side of barge RMT 315 which resulted in the death of Eric Allen and alleged injuries to Joshua Broughton, Tim Flemming and Stephen Turner.

24.     The Estate of Eric Allen, deceased, and Joshua Broughton, Tim Flemming, and Stephen Turner have filed lawsuits against Billy Joe Thomas alleging damages for wrongful death and personal injury.  Billy Joe Thomas will answer these complaints denying their allegations of his fault and their damages, but in the event that any liability is adjudged against Billy Joe Thomas, Stephen Turner will be obligated to indemnify Billy Joe Thomas to the extent that his culpability caused the collision.

25.     As a joint adventurer, Tim Flemming was as culpable as Casey Barnick for each of the violations of Illinois and federal law.

WHEREFORE, Billy Joe Thomas, prays that the Complaint of Tim Flemming against him be dismissed; that joint adventurer Tim Flemming be adjudged jointly and severally culpable for the collision; and that Tim Flemming be adjudged liable to Billy Joe Thomas for any sums adjudged against him in favor of the Estate of Allen, Joshu Broughton, Stephen Turner or Casey Barnick and that Billy Joe Thomas recover his court costs and attorney fees with interest.

**COUNT III**

**Stephen Turner vs. Billy Joe Thomas**

1-14.   Plaintiff/Claimant hereby adopts and realleges paragraphs I through 14 of the Allegations Common to All Counts section as paragraphs 1-14 of Count III.

ANSWER: defendant repeats and realleges its answers and responses to paragraphs 1 through 14 of the Allegations Common to All Counts as its answers and responses to paragraphs 1 through 14 of Count III.

15. At all relevant times, BILLY JOE THOMAS had a duty to ensure the *M/V Herman Crown* and *Barge RMT* 315 were operated in a reasonably safe manner.

ANSWER:  Admitted that defendant had a duty to operate the M/V HERMAN CROWN and barge RMT 315 in a reasonably safe manner, otherwise denied.

15-2. On May 21, 2004, BILLY JOE THOMAS was guilty of one more of the following negligent acts, omissions, or violations of statute:

> (a)  Failed to keep a safe and proper lookout for other boats on the river as required by U.S. Coast Guard Rules;
>
> (b)  Failed to exhibit the lighting required by 62-5 111LCS ~5/4-2(C);
>
> (c)  Operated the vessel without proper lighting and radar required by U.S. Coast Guard Rules and Regulations;
>
> (d)  Failed to keep out of the way of a vessel ascending or descending a river as required by U.S. Coast Guard Rules; and/or
>
> (e)  Failed to sound a whistle when in doubt that efficient action was being taken by another

ANSWER: 15-2.  Defendant denies each and every allegation of the second paragraph numbered 15 and each of its subparts (a) through (e).

**16. – 20.  There are no paragraphs numbered 16 through 20 and defendant makes no answer.**

21.  As a direct and proximate result of one or more of the foregoing negligent acts, omissions or violations of statute by BILLY JOE THOMAS, the pleasure craft in which Stephen Turner was riding struck the aforementioned barge resulting in serious injury and death to him.

ANSWER: Denied.

22.  Plaintiff/Claimant desires and is entitled to trial by jury in this matter.

ANSWER:  Denied.  The only basis plaintiffs have for federal court

jurisdiction is admiralty and there is no jury in admiralty cases.  Rule 38

(e) F.R.Civ. P.

WHEREFORE, the defendant Billy Joe Thomas prays that the Complaint of Stephen Turner be dismissed at plaintiff's costs.

## AFFIRMATIVE DEFENSES

Defendant alleges the following affirmative defenses:

1.      At all material times there was a group of six loaded sand barges moored in the Chillicothe Terminal of Galena Road Gravel, Inc. located approximately .5 miles northnortheast of the Illinois River at mile 181.0

2.      At all material time the M/V Lemont Trader was laying alongside sunken spar barges on the right descending bank of the Illinois River between mile point 180.7 and 180.9 with its bow headed upstream.

3.      At or about 10:00 P.M., the defendant was navigating the M/V HERMAN CROWN pushing a single loaded sand barge out of the Galena slip and into the right descending

side of the Illinois River. Upon leaving the slip, the defendant broadcast a security call on VHF Channel 16 advising traffic in the river of his position and intention to enter the river.

4.      At or about 10:00 p.m., a 17 foot motor boat was being navigated along the right descending bank of the Illinois River at a speed in excess of 25 mph by Casey Barnick and was located north of mile point 185.

5.      The horn of the M/V HERMAN CROWN was compliant with C.F.R. §86.05 and audible for a distance of at least 1.5 miles, but would not have been audible to Casey Barnick who was 4 miles away upwind and sitting close to a 60 horsepower boat motor.

6.      As the defendant was pushing one loaded barge stern first at a speed not in excess of two miles per hour with the intent of stopping it on the edge of the river, turning it end for end, and backing its stern downstream and into the two of the M/V LEMONT TRADER, a distance of not more than 1,000 feet, the defendant was playing the searchlight of the boat on the end of the barge farthest from the pilot house of the boat, and this, in addition to the two vertical white lights displayed above the pilot house of the HERMAN CROWN was at all times sufficient to bring attention to the forepart of the barge and the defendant was at all times in compliance with 33 U.S.C. § 2024 (h) and (i).

7.      At no time was the defendant crossing the Illinois River and at no time was the defendant a burdened vessel within the meaning of the Rules.

8.      The motorboat operated by Casey Barnick was never a privileged vessel within the meaning of the Rules.

9.      At all material times, the defendant was keeping a proper lookout and was navigating with due care and caution.

10.    The visibility of the motorboat's lights was obscured by its passengers and the vessel was not seen by the defendant until its collision with the side of the barge in tow of the HERMAN CROWN was imminent.

11.    At approximately 10:10 p.m. Casey Barnick struck the broad side of Barge RMT 315 which was stopped or nearly so at this time.   The defendant was not culpable by any act or omission which caused or contributed to cause the collision but the collision was solely caused by the culpability of Casey Barnick and his co-adventurers, including the plaintiff Stephen Turner in the particulars alleged in the Counterclaim which follows.

<u>**COUNTERCLAIM**</u>

1.    At all material times, Casey Barnick was intoxicated.

2.    At all material times passenger Joshua Broughton was intoxicated.

3.    At all material times passenger Stephen Turner was intoxicated.

4.    At all material times passenger Tim Flemming was intoxicated.

5.    At all material times, Eric Allen, deceased was intoxicated.

6.    Prior to 8:00 p.m. on the evening of May 21, 2004, Casey Barnick, Joshua Broughton, Stephen Turner, Tim Fleming and Eric Allen set about on a joint adventure to go beer drinking and boat riding on the Illinois River in Casey Barnick's 17' motorboat; and each of them contributed to the venture with money and or labor and became jointly and severally liable for any culpability in the operation of the boat which resulted in a collision, death or personal injury.

7.    The four co-adventurers continued drinking beer as Casey Barnick navigated the boat and encouraged his intoxication by serving him beers as he was operating the boat.

8.      As the five men became intoxicated, their ability to keep proper lookouts for their own safety became impaired and the judgment of Casey Barnick in his operation of the motorboat became impaired and each of the joint adventurers were aware that Casey Barnick was intoxicated while operating the boat.

9.      At or about 10:05 p.m. as they were heading southbound along the right descending bank of the Illinois River, the tow boats HERMAN CROWN and LEMONT TRADER came into view directly ahead of them.

10.     Notwithstanding that both boats were showing two white lights on their masts above their pilot houses, indicating that they had barges in tow, Casey Barnick took no heed of these signals and continued full ahead at a speed in excess of twenty-five miles per hour.

11.     One or more of his joint adventurers saw barge RMT 315 ahead of the M/V HERMAN CROWN and attempted to warn Casey Barnick, but Casey Barnick, being impaired by the excessive consumption of alcohol, failed to heed his joint adventurer's warning and continued operating his boat at a high rate of speed into the side of Barge RMT 315 at or about 10:10 p.m.

12.     At all material times there was in full force and effect a statute of the State of Illinois which governed the conduct of navigators of vessels upon the Illinois River, as follows:

**Illinois Consolidated Statutes Chapter 45/5 -16**
**45/5-16. Operating a watercraft under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or combination thereof**

(A) 1. A person shall not operate or be in actual physical control of any watercraft within this State while:

(a) The alcohol concentration in such person's blood or breath is a concentration at which driving a motor vehicle is prohibited under subdivision (1) of subsection (a) of Section 11-501 of the Illinois Vehicle Code;
(b) Under the influence of alcohol;

(c) Under the influence of any other drug or combination of drugs to a degree which renders such person incapable of safely operating any watercraft;

(c-1) Under the influence of any intoxicating compound or combination of intoxicating compounds to a degree that renders the person incapable of safely operating any watercraft;

(d) Under the combined influence of alcohol and any other drug or drugs to a degree which renders such person incapable of safely operating a watercraft; or

(e) There is any amount of a drug, substance, or compound in the person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, or an intoxicating compound listed in the Use of Intoxicating Compounds Act.

2. The fact that any person charged with violating this Section is. or has been legally entitled to use alcohol, other drug or drugs, any intoxicating compound or compounds, or any combination of them, shall not constitute a defense against any charge of violating this Section.

* * *

* * *

5. Every person convicted of violating this Section shall be guilty of a Class 2 felony if the offense results in the death of a person. A person guilty of a Class 2 felony under this paragraph 5, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years.

* * *

13.  Casey Barnick pled guilty to a violation of 45 ILCS 5-16-5, a class 2 felony.

14.   At all material times there were in full force and effect statutes of the United States governing the navigation of vessels on the western rivers of the United States which includes the Illinois River, and that provided in relevant parts the following:

Rule 2.  Nothing in these Rules shall exonerate any vessel, or the owner, master or crew thereof, from the consequences of any neglect to comply with these Rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case. 33 U.S.C. § 2002;

Rule 5.  Every vessel shall at all times maintain a proper look-out by sight and circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision. 33 U.S.C. § 2005;

Rule 6.  Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.  33 U.S.C. § 2006;

In determining a safe speed the following factors shall be among those taken into account:

(a) By all vessels:

(i) the state of visibility;

(ii) the traffic density including the concentration of fishing vessels or any other vessels;

(iv) at night the presence of background light such as from shores lights or from back scatter of her own lights;

Rule 7. Every vessel shall use all available means appropriate to the prevailing circumstances and condition to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist. 33 U.S.C. 2007;

Rule 15. When two power-driven vessels are crossing so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way and shall, if the circumstances of the case admit, avoid crossing ahead of the other vessel. 33 U.S.C. § 2015;

Rule 16. Every vessel which is directed to keep out of the way of another vessel shall, so far as possible, take early and substantial action to keep well clear. U.S.C. § 2016;

Rule 17. Where one of two vessels is to keep out of the way, the other shall keep her course and speed. § 2017;

Rule 18. A power-driven vessel underway shall keep out of the way of:

(ii) A vessel restricted in her ability to maneuver.

14. At all material times the presence of the M/V LEMONT TRADER and the M/V CHICAGO TRADER were clearly visible to any vessel proceeding south along the right descending bank of the Illinois River from a distance of at least four miles away, and the presence of these two vessels in proximity to one another created a special circumstance within the meaning of Rule 2.

15.   Due to their intoxication and their failure to keep a proper look-out, Casey Barnick and his coadventurers failed to see the M/V LEMONT TRADER and the M/V CHICAGO TRADER and failed to recognize that their proximity to one another created a special circumstance in violation of Rule 2.

16.   Due to their intoxication, Casey Barnick and his joint adventurers were unable to keep a proper look-out and to recognize the prevailing circumstances presented by the presence of the M/V LEMONT TRADER and the M/V HERMAN CROWN and they failed to take appropriate measures such as slowing down or stopping to permit their diminished mental capacity to recognize and comprehend the special circumstances presented by the M/V LEMONT TRADER and the M/V HERMAN CROWN all in violation of Rules 5, 6 and 7.

17.   In violation of Rule 6, Casey Barnick and his joint adventurers proceeded at a speed in excess of 25 miles per hour or 37 feet per second which was grossly excessive given the presence of the M/V LEMONT TRADER and the M/V HERMAN CROWN ahead of them, the presence of shore lights from the Chillicothe waterfront in the background and their diminished psycho-physiological responses resulting from their intoxication.

18.   In violation of Rule 7, Casey Barnick, failed to slow down upon approaching the M/V LEMONT TRADER and the M/V HERMAN CROWN and failed to steer his course to his port into the main channel of the river to give the towboats a wide berth and avoid the risk of any collision.

19.   In the thirty seconds preceding the collision, Casey Barnick's course was perpendicular to and crossing the course of the HERMAN CROWN and Barge RMT 315

from their port sides to their starboard sides.  As such, Casey Barnick had the duty to keep out of the way of the HERMAN CROWN according to Rule 15 which he violated.

20.     In violation of Rule 16, Casey Barnick took no action whatever to avoid the collision.

21.     Casey Barnick failed to heed the warnings of one or more of his joint adventurers that the barge RMT 315 was directly in his path.

22.     The M/V HERMAN CROWN with Barge RMT 315 ahead was a vessel restricted in her ability to maneuver and Casey Barnick's failure to keep out of the way was a violation of Rule 18.

23.     The culpability of Casey Barnick and his joint adventurers as set forth in paragraphs 1, 8 and 11  through 22 caused the collision between his motorboat and the side of barge RMT 315 which resulted in the death of Eric Allen and alleged injuries to Joshua Broughton, Tim Flemming and Stephen Turner.

24.     The Estate of Eric Allen, deceased, and Joshua Broughton, Tim Flemming, and Stephen Turner have filed lawsuits against Billy Joe Thomas alleging damages for wrongful death and personal injury.  Billy Joe Thomas will answer these complaints denying their allegations of his fault and their damages, but in the event that any liability is adjudged against Billy Joe Thomas, Casey Barnick will be obligated to indemnify Billy Joe Thomas to the extent that his culpability caused the collision.

25.     As a joint adventurer, Stephen Turner was as culpable as Casey Barnick for each of the violations of Illinois and federal law.

WHEREFORE, Billy Joe Thomas, prays that the Complaint of Stephen Turner against him be dismissed; that joint adventurer Stephen Turner be adjudged jointly and

severally culpable for the collision; and that Stephen Turner be adjudged liable to Billy

Joe Thomas for any sums adjudged against him in favor of the Estate of Allen, Joshua

Broughton, Tim Flemming or Casey Barnick and that Billy Joe Thomas recover his court

costs and attorney fees with interest.

BILLY JOE THOMAS,
by his attorneys,

s/ Michael A. Snyder
s/ Timothy S. McGovern

Michael A. Snyder
343 S. Dearborn Street Ste. 2015
Chicago, Illinois 60604-4474
tel. 312-447-0260
fax 312-447-0262
E-mail shiplaw@juno.com

## Certificate of Service

I, Michael A. Snyder, attorney, certify that I mailed a true copy of the foregoing Answers, Affirmative Defenses and Counterclaims to Ralph D. Davis, Janssen Law Center, 333 Main Street on this first day of April, 2006.

s/ Michael A. Snyder
